## JACKSONVILLE, NORTH-WESTERN AND SOUTH-EASTERN RAILWAY COMPANY.

### v.

### ROBERT HALL.

1. PRACTICE—WAIVER.—An agreement by the parties that a cause may be tried on a day fixed, is a submission to the jurisdiction of the court, and a waiver of the right to move for a dismissal of the cause on the ground that the cost of a change of venue has not been paid.

2. CONTRACT—VARIANCE—PARTIES.—Appellee declared against appellant as common carrier, alleging a contract to carry appellee's cattle, etc. Appellant insisted that appellee, with one B, hired a car, paying a stated price for the same, and assuming all the risk of transportation in consideration that appellant would allow the servants of appellee and B. to take charge of the car. If the contract was as is insisted by appellant, it would vary from the one declared upon, as not being between the same parties or in the same terms. But if it should appear that the railroad company fixed the rate per car, and the interest and ownership of the cattle were several, and appellee's cattle alone were injured, then the right of action would be in him.

3. EVIDENCE—FREIGHT-BOOK, WAY-BILL, ETC.—The freight-book kept by the agent of the railway company, showing a statement of the contract between the company and appellee, and the way-bill, were competent evidence as being part of the res gestæ, and should have been admitted, as they tended to prove the contract as alleged by appellant.

4. INSTRUCTIONS TO JURY—RELEASE OF LIABILITY.—It was error to

instruct the jury that the fact, if proven, that appellee's servant was present and assisted in loading the cattle, does not release the defendant from liability, unless they should also find that appellant agreed if the cattle should be so loaded he would release the defendant from liability. The jury should have been told that such fact might be taken into consideration, along with other evidence, in determining whether there was such an agreement or not. No express agreement to release need be proven, but such release would be the result if appellee had assumed the responsibility himself, for a consideration.

APPEAL from the Circuit Court of Cass county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. DUMMER, BROWN & RUSSELL, for appellant; that the motion to strike the case from the docket for failure to pay costs of change of venue, should have been allowed, cited Rev. Stat. 1874, chap. 146, § 13.

Appellee cannot recover by reason of a variance between his allegations and the proof: C. B. & Q. R. R. Co. v. Magee, 60 Ill. 530; C. M. R. R. Co. v. Rockafellow, 17 Ill. 541.

The declaration must allege special damages, or evidence will not be allowed showing such damages: Olmstead v. Burke, 25 Ill. 87; Sherman v. Dutch, 16 Ill. 283; 1 Puterbaugh's Pl. & Pr. 564.

A common carrier is not liable where the loss arises from the default of the consignor: Williams v. Grant, 1 Conn. 487; 1 Bouv: Law Dict. 249.

The sixth instruction given for appellee did not state the law correctly, and was calculated to mislead the jury: C. B. & Q. R. R. Co. v. Griffin, 68 Ill. 499.

Where there is evidence tending to prove a fact, it is the duty of the court to give an instruction, properly framed, which is based upon it: Milliken v. Martin, 66 Ill. 13.

Messrs. MORRISON, WHITLOCK & LIPPINCOTT, for appellee; that where the interest in, or ownership of, the cattle was several and not joint, the right of action would be several, cited Cobb v. Steele, 80 Ill. 101; Robertson v. March, 3 Scam. 198; St. L. A. & R. R. Co. v. Coultas, 33 Ill. 188; 1 Parsons on Contracts,

26; Baggs v. Corten, 10 Serg. & Rawle, 211; Carlton v. Brown, 2 Leigh, 98.

LACEY, J. This was an action in assumpsit, the declaration containing two counts, in the first of which it was averred that defendants were common carriers, etc., on their railroad running from Jacksonville, in Morgan county, to Virden, in Macoupin county. That appellee caused to be delivered to defendants for transportation, one bull, one cow and three heifers, to be transported by defendants, as common carriers, from Jacksonville, in Morgan county, to Virden, in Macoupin county, and there delivered to appellee. That the appellants, through negligence and carelessness, allowed the stock to be injured and lost, to his damage of $1,500.

The second count is pretty near the same, except it was alleged that appellee, in connection with one Phillip A. Buraker, put into the cars of the Peoria, Pekin and Jacksonville Railroad, like common carriers, the said live stock to be carried with the live stock of said Buraker to Jacksonville, in Morgan county, and then and there to be taken by defendants over their road to Virden, in Macoupin county, and there delivered to plaintiff; and for breach, avers that the defendants did not safely deliver the stock, but through carelessness and negligence of defendants, the stock was injured, to appellee's damage of like $1,500.

The case was twice tried in Morgan county, at one of which trials the jury failed to agree, and at the other the jury found for defendants. Plaintiff then took a change of venue to Cass county, but failed to pay the cost of the change, and defendants moved the court to strike the cause from docket for the above reason. The court denied the motion, and appellants excepted. This action of the court is assigned for error.

It appears from the record, though not abstracted, that on Feb. 26, 1878, by agreement of the parties, the cause was to be tried on the following Monday. On that day both parties appeared with their witnesses for trial, when this motion was made by appellants. We regard such an agreement as a submission to the jurisdiction of the court, and a waiver of the

right to make such motion.    The Circuit Court of Cass county committed no error in overruling the motion.

To the above declaration the appellants plead the general issue.    The cause was tried, and resulted in verdict and judgment for appellee for $420.

From this judgment an appeal is taken to this court.

On the trial of the cause below, the appellants contended that the contract was not as declared on by appellee, but that they rented to appellee a car, without any reference as to how many cattle were to be put in it, for $40.

That appellee was to have full control of the car, and in consideration that appellee should send a man along with the cattle to care for them, such servant was to have transportation free, and that appellee was to assume all risk of damage resulting from the negligence of his own servant; in other words, that the appellants were to be freed and released from the care and oversight of the cattle in the cars while on the passage. It appears from the evidence that eleven head of cattle, six of appellee and five belonging to Buraker, were shipped in the car on the P. P. & J. R. R. from Little Indian station, in Cass Co., and sent to Virden, and thence to be sent to Carlinville, to be exhibited at a county fair    Buraker was at the station and took the cars on 23 Sept., 1872, and Grier, the servant of appellee, and Buraker and Buraker's son went off with the car, and that they fastened it up and had full control of it, and filled it up and loaded it.    Wm. Stevenson, the station agent of Little Indian, swears that he told Buraker to keep the little windows in the end of the car closed, but Buraker refused, and said the boys would be in there, and he would take the risk and keep them open.    It appears further that Grier stayed in the car with the cattle, looking after them, till he reached Jacksonville, but then quit the car and rode in the passenger.    That a few hundred yards before the train reached Franklin, a station on defendant's road in Morgan Co., the car took fire, either from outside of the car, possibly from sparks from the locomotive, or from matches in a pine box containing a quantity of combustible articles, and placed on boards in the rear end of the car, near the roof, by Buraker, at the station whence the

stock was shipped.   By means of this fire four of appellee's cattle were severely injured, and to recover for this injury this suit is brought.

It would seem from the evidence had Grier been in the car with the cattle at the time the fire broke out he could have extinguished it before any damage was done or have prevented its igniting.   Were the contract between the parties, the appellants of the first part and Hall and Buraker of the second part, as contended for by appellants, it would be variant from the one declared on in that it would not be made between the same parties or in terms the same as appellee and Buraker would have assumed—the responsibility of looking after the cattle in the cars, assuming all risk arising from their own negligence; but on the other hand, if the evidence showed the facts to be that the P. P. & J. R. R. Co. fixed the rate per car and the interest and ownership of the cattle were several as between Hall and Buraker, and appellee's cattle alone were injured, the right of action would be in him.   Combs v. Steele et al. 80 Ill. 101; Robertson v. March, 3 Scam. 198; St. L. A. & R. R. Co. v. Coultas, 33 Ill. 188; 1 Par. Cont. 26, note; Boggs v. Carten, 10 Sand. R. 211; Carthon v. Brown, 3 Leigh, 98.

Appellee on cross-examination was asked by counsel for appellants whether he gave Grier any instructions as to where he should ride and whether he was not taken along as appellee's hired man to take care of the cattle.   Appellants also offered in evidence their freight book made by Stevenson, their station agent at Little Indian, showing statement of the agreement made with Hall and Buraker at the time of the transaction, also way-bill, an exact copy of which was forwarded to the next company and one to Hall and Buraker.   The court excluded this evidence, and appellants excepted.   This evidence tended to prove the contract to be in effect as contended for by appellants, and should have been admitted; nor was the freight-book and way-bill obnoxious to the objection of mere hear say evidence, for the reason that they were a part of the *res gestæ* and one copy of the way-bill had been delivered to appellee.

The appellants also take exception to the action of the court below in giving appellee's 5th and 6th instructions, among others.

The fifth instruction required the appellants to prove to the satisfaction of the jury that appellee agreed to have said Grier take charge of said cattle, and release appellants from his liabilities therefor, etc. This is error; a preponderance of the evidence is all that is required in a civil suit. The sixth instruction tells the jury that if the fact was proven that Grier was present at the time the cattle in question was loaded, and assisted in loading the same, yet the fact itself does not release the defendant from its liability as a common carrier, etc., unless the jury find from the evidence in this case, that the plaintiff or his authorized agent, at the time agreed, that in case the cattle should be so loaded, he would release defendant from its liability, etc. The instruction as it stands is well calculated to lead the jury to believe that the fact of Grier's action set forth in the first part of the instruction would be no fact tending to prove the supposed agreement set forth in the latter part. It should be so modified as to tell the jury that such fact may be taken into consideration, together with all the evidence, in determining whether there was such an agreement or not. Again, no express agreement to release appellants from caring for stock in cars need be proven, but such release would be the result if the appellee assumed such responsibility himself for a consideration. Where the evidence is equally balanced the instructions should be accurate, and the jury should not be influenced by improper instructions. T. W. & W. R. R. Co. v. Moore, 77 Ill. 217; Shaw v. People, 81 Ill. 150; Volk v. Rock, 70 Ill. 297.

For the errors above noted the judgment of the court below is reversed and the cause remanded.

Reversed and remanded.